

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES SCHWAB INCORPORATED, | } } } | |
| Plaintiff, | } } | |
| vs. | } } | |
| TERI JONES; THE JENSON FAMILY TRUST; ROLAND JENSEN; HELEN JENSON, | } } } } | CASE NO. 08-B-829-W |
| Defendants. | } } | |
| TERI JONES, | } } | |
| Counter-claimant, | } } | |
| vs. | } } | |
| CHARLES SCHWAB INCORPORATED, | } } } | |
| Counter-defendant. | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on defendant Teri Jones's ("Jones") Motion to

Dismiss Complaint for Interpleader and Order Funds to be Paid Over to Defendant, (doc.

3).[1]  Jones has also filed a Counterclaim, (doc. 4), against plaintiff Charles Schwab

Incorporated ("Schwab"), alleging conversion and a breach of fiduciary duty.  (Doc. 4 at

2.)  Although Schwab has not filed any opposition to the motion to dismiss, defendants

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

Roland Jensen and Helen Jensen ("the Jensen Trustees"), in their capacity as trustees for the Jensen Family Trust ("the Jensen Trust"), have filed an Answer and Claim for Interpleader, (doc. 9), as well as an Opposition to Motion to Dismiss, (doc. 10).  Based upon the record, the submissions of the parties, and the relevant law, the court is of the opinion that Jones's motion to dismiss is due to be denied.

## I. FACTUAL BACKGROUND

Schwab, a national securities brokerage firm with its principal place of business in San Francisco, California, filed this statutory interpleader action[2] on May 9, 2008 (doc. 1), against Jones, a resident of Florida, The Jensen Trust, a trust organized under the

---

[2] Interpleader, as a procedural device, "allows a party exposed to multiple claims on a single obligation or property to settle the controversy and satisfy his obligation in one proceeding." *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 583 (D.C. Cir. 1993).  There are two types of interpleader actions: those filed under the interpleader statutes, 28 U.S.C. §§ 1335, 1397, 2361 (statutory interpleader), and those filed under Rule 22 of the Federal Rules of Civil Procedure ("the Federal Rules") (rule interpleader).  While rule interpleader actions are based on the general jurisdiction statutes applicable to civil actions in the federal courts, requiring either a federal question or complete diversity of citizenship and an amount in controversy greater than $75,000, statutory interpleader gives district courts original jurisdiction of:

> any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if (1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property . . .; and if (2) the plaintiff has deposited such money or property . . . into the registry of the court, there to abide by the judgment of the court, . . . .

28 U.S.C. § 1335; *see* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure Civil* § 1710 (3d ed. 2008).

laws of California, and the Jensen Trustees, who are both residents of California.  (*Id.* at
¶¶ 2–5.)  Schwab alleges that Jones purchased $2 million dollars of "Capstone series
2000B" bonds that were issued to finance a development, and upon that development's
collapse, Jones initiated an Alabama state court action that remains pending, *Jones v.
Capstone Dev., LLC*, No. 03-1169, in which Jones was awarded a portion of U.S. Bank's
$1 million letter of credit that was backing the bonds.  (*Id.* at ¶8-9 and  Ex. A, ¶1)

On or about November 2, 2004, Jones executed two sales through Schwab, from
two separate Schwab accounts, selling $2 million worth of "Capstone"-related bonds for
$50,500 per sale to Ryan Beck & Co., Inc. ("Ryan Beck"),[3] (*id.* at ¶ 10, Ex. B; doc. 3 at
¶¶ 3-4); on the same date, the Jensen Family Trust purchased $2 million of "Capstone"
series B securities from Ryan Beck for $108,604.95, (doc. 1 at ¶ 10, Ex. C).  According to
the Jensen Trustees, at some point in the spring of 2007, the Jensen Trustees learned that
the securities they had purchased from Ryan Beck were worthless due to the credit Jones
had received for the bonds as a result of the state court lawsuit.  (Doc. 9 at ¶ 5.)  Both
Jones and the Jensen Trustees have now asserted a claim to the total sales proceeds, (doc.
3 at ¶ 1; doc. 9 at ¶ 7), which were allegedly deposited in Jones's Schwab accounts, (doc.
1 at ¶ 12).  As a result of these adverse claims both from Jones and from the Jensen
Trustees, Schwab has placed a $50,500 cash hold on each of Jones's two accounts with
Schwab, (*id.* at ¶ 12), and has filed the instant interpleader action, depositing the sum of

---

[3] The Jensen Trustees have informed the court that Stifel Nicolaus & Company is the
successor-in-interest to Ryan Beck.

$101,000 (an amount equivalent to the total bond sales proceeds) into the registry of the court, (*id.* at ¶ 16; doc. 2).

## II. DISCUSSION

The issue before the court is whether Schwab's interpleader action is due to be dismissed as a matter of law.  Jones argues that Schwab has wrongfully denied her access to the $101,000 placed on hold in her accounts, since 1) the trades executed on November 2, 2004, were unrelated to the frozen funds, 2) no actual claim to those funds has been asserted by the Trust or its Trustees, and 3) Schwab has no contractual right to hold the funds over a potential lawsuit.  (Doc. 3 at ¶¶ 2–4.)

### A. Standard of Review

Although Jones's motion is not styled as a motion under Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure ("the Federal Rules"), for lack of subject matter jurisdiction or failure to state a claim, respectively, the court finds it prudent to review this motion in the same way that it would those Rule 12 motions; thus, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the interpleader plaintiff, Schwab.  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980)) (standard for 12(b)(1) motions that are "facial attacks" on jurisdiction, *i.e.*, that do not involve matters outside the pleadings); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (standard for 12(b)(6) motions).  A motion to dismiss must be denied when "[a plaintiff's claims] may be supported by showing any set of facts

4

consistent with the allegations in the complaint." *See Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 127 S.Ct. 1955, 1969 (2007) (substantively rephrasing and broadening the "no

set of facts" dismissal standard that was the Supreme Court's previous precedent in

*Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).  Because statutory interpleader is based on

diversity jurisdiction, albeit diversity only among the claimants, a federal court must

apply the law of the forum state to questions of substantive law.  *See Wachovia Bank,*

*Nat'l Ass'n v. Tien*, 534 F. Supp. 2d 1267, 1284 (S.D. Fla. 2007); 7 Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure Civil* § 1713 (3d ed.

2008).

**B. Components of an Interpleader Claim**

As noted above, Schwab filed this action under the chief interpleader statute, 28

U.S.C. § 1335, as opposed to Rule 22 of the Federal Rules.  Given that Schwab has

identified two adverse claimants who are of diverse citizenship and who have asserted

claims to the interpled fund of $101,000, there is only one element of the interpleader

statute that Schwab might not meet and that therefore requires further discussion: whether

Schwab has found itself in one of the four situations in which interpleader can legally be

invoked.  That is, the court must determine whether Schwab: 1) has in its custody or

possession money or property of the value of $500 or more; 2) has issued a note, bond,

certificate, policy of insurance, or other instrument of value or amount of $500 or more;

3) has provided for the delivery or payment or the loan of money or property of such

amount or value; or 4) is under any obligation written or unwritten to the amount of $500

or more.  *See* 28 U.S.C. § 1335.[4]

Although a response brief from Schwab to Jones's motion to dismiss might have

clarified the point, Schwab most squarely falls into the fourth category, being under an

obligation in the amount of $500 or more.  There are no allegations that Schwab has

custody or possession of the money in Jones's accounts (although Schwab obviously had

the ability to freeze Jones's account holdings, and thus arguably has some kind of

custodial power over them), and there are also no allegations that Schwab has issued any

note or other instrument of value, or that it has provided for the delivery or payment or

loan of the sum in question, though it was certainly involved in the delivery of the bonds

to and in the receipt of the bond sales proceeds from the intermediary, Ryan Beck.

Instead, Schwab alleges only that Jones executed trades of bonds for cash through her

Schwab accounts; in this regard, then, Schwab, similar to any bank, is essentially indebted

to Jones for the amount of the sale, and thus is under an obligation of $101,000, a

significantly greater amount than the statutory requirement of $500.  *See Tien*, 534 F.

Supp. 2d at 1285 ("A bank account is legally a debt owed by the bank to the depositor.");

*see also Pratt v. First Nat'l Bank of Fayette*, 9 So. 2d 744, 747 (Ala. 1942) (finding that,

under the Alabama interpleader statute, even if a bank had actually paid a disputed fund

to one of the adverse claimants, the bank could still be under a hazard of double liability

---

[4] While Jones disputes Schwab's allegation that the money in Jones's Schwab accounts is in any way related to the bond sales proceeds, (doc. 3 at ¶ 4), for the purposes of this motion to dismiss, the court accepts the allegations in Schwab's complaint as true and therefore finds the interpled funds related to the bond sales proceeds to which both Jones and the Jensen Trustees have staked a claim.

and was entitled to interplead the fund).  Consequently, while the court acknowledges the

hardship placed on Jones by having $101,000 to which she is potentially entitled frozen

by Schwab when it and the Jensen Trustees merely allege that there is a competing claim,

the court cannot escape the conclusion that Schwab has, based on its pleading, met the

minimum requirements for filing an interpleader action.

## C. State Law Regarding Adverse Claims to Deposits

The scant relevant authority that the court can find regarding adverse claims to

funds held by financial institutions, particularly where the institution has ostensibly

complied with the interpleader statute, supports the court's denial of Jones's motion to

dismiss and its allowance that Schwab proceed in interpleader, at least for the time being.

Although it involves Alabama's own interpleader statute and not the federal

statute[5], the Supreme Court of Alabama's opinion in *Pratt v. First National Bank of

Fayette,* 9 So. 2d 744, 746 (1942), is particularly instructive.  In *Pratt*, a certificate of

deposit that had been issued to both a husband and wife and that was apparently governed

by a right of survivorship became the subject of conflicting claims upon the husband's

death; the administrator of the husband's estate sent the bank a written notice claiming the

certificate as property of the estate, so the bank declined to pay the certificate to the wife

at maturity and interpled the certificate amount instead.  *See id.*  In affirming the trial

court's determination that the case was a proper interpleader action, the Alabama

---

[5] *Pratt* was decided six years before a federal cause of action for interpleader was
created.  *See* 28 U.S.C. § 1335 (1948).

Supreme Court reasoned:

> The fact that the certificate in suit was properly issued to [the
> wife], and as between her and the bank, there is no question
> of her right to recover, is not an objection to interpleader, but
> rather an occasion therefor.  The [bank] must be in the
> position of an indifferent stake-holder confronted with
> conflicting claims.  It is not for [the bank] to take sides in
> interpleader proceedings.

*Id.*  Applying this logic to Schwab's actions, even if there is no doubt that, as between

Jones and Schwab, Jones has a right to recover the money that is in her accounts (and

that, as explained above, the bond sales proceeds are akin to a debt that Schwab owes

Jones), a conflicting claim to the money in Jones's accounts is precisely an occasion for

interpleader.  To be sure, there is the potential for financial institutions to abuse the

interpleader statutes and deprive account holders of their rightful property, but the *Pratt*

court severely limited this risk by finding that:

> [i]nterpleader does not lie where, by some wrongful act of the
> [interpleading plaintiff], he has involved the [adverse
> claimants] in a controversy from which he seeks to extricate
> himself; or has, by his own act, incurred an independent
> liability to [one of the adverse claimants].  This means a state
> of facts under which [the interpleading plaintiff], in equity
> and good conscience, is bound to pay [one of the adverse
> claimants], regardless of the merits of the claim of a third
> person.

*Id.* at 746–47.  Without any allegations that Schwab has acted wrongfully *independent of*

freezing and interpleading the disputed fund,[6] Jones cannot establish that, as a matter of

_____

[6] As noted above, Jones has filed a counterclaim against Schwab, alleging conversion and breach of fiduciary duty.  (Doc. 4 at 2.)  Both of these claims, however, relate to the manner in which Schwab executed the hold on Jones's accounts in order to deposit the interpled fund into the registry

law, "in no event could [the bond sales proceeds] belong to [the Trust and its Trustees]."
*See id.* at 747.

The court is also aware that there is a potentially significant Alabama statute regarding adverse claims to deposits, and that there has been some discussion by the Alabama Supreme Court as to whether this statute bars interpleader in a situation where the adverse claims do not procedurally comply with the statute.  In relevant part, the statute reads:

> Notice to any bank of an adverse claim to a deposit standing on its books to the credit of any person shall not be effectual to cause said bank to recognize said adverse claimant unless said adverse claimant shall also either procure a restraining order, injunction or other appropriate process against said bank . . . or shall execute to said bank in form and with sureties acceptable to it, a bond indemnifying said bank from any and all liability . . . .

*Ala. Code* § 5-5A-42 (1975).  In *Whatley v. Ballard*, a rule interpleader action in which no claims were filed against the bank in accordance with the terms of § 5-5A-42, the Alabama Supreme Court held that the statute did not apply and that interpleader was permissible because the adverse claimants were effectively co-account holders and therefore were not "strangers" to the account and its deposits.  *See* 582 So. 2d 531, 533 (1991).  The court thus left open the question of whether a finding that one of the adverse

---

of the court, and do not appear to allege wrongdoing independent of filing this interpleader action. While the court does not decide the merits of the counterclaim on this motion to dismiss, the court does find that the wrongful acts alleged in the counterclaim do not, by themselves, prevent Schwab from interpleading, but only subject Schwab to potential liability if the relief requested by the counterclaim is later granted.

claimants was a "stranger" to the account would require compliance with § 5-5A-42 and would preclude interpleader actions where notice of an adverse claim was not in the form either of a court order or of an indemnification.

In the absence of any clear authority that § 5-5A-42 is a bar to Schwab's interpleader action or that the Jensen Trustees are "strangers" to Jones's accounts (much less any authority holding § 5-5A-42 applicable to a non-bank financial institution such as Schwab), the court finds that § 5-5A-42 does not present a reason for dismissing Schwab's interpleader action.  In addition, the *Whatley* court itself offered an explanation of the practical effect of its holding in a way that lends some support for Schwab, despite the fact that the Trust and its Trustees are not co-depositors with Jones in Jones's Schwab accounts:

> [T]o hold otherwise [than that § 5-5A-42 does not apply]
> might well allow an individual to take possession of the
> [funds] belonging to another and deposit them, and while the
> owner of the [funds] sought to comply with § 5-5A-42 by
> filing an injunction or obtaining the bond necessary under that
> provision, the other "depositor" could withdraw and spend the
> funds deposited.

582 So. 2d at 533.  Viewed in this light, Jones's objections that Schwab's institution of an interpleader action has amounted to a prejudgment attachment and a conversion of her assets are essentially an acknowledgment of the unavoidable — though understandably problematic for Jones — consequences of interpleader, to protect the potential rights of the Jensen Trustees and to protect Schwab from the "hazard of double liability."  Without more *relevant* allegations of Schwab's wrongdoing, that is, allegations unrelated to

10

Schwab's method of instituting this interpleader action, the court simply cannot conclude that there are presently sufficient grounds for dismissal.

### III. CONCLUSION

Based on the foregoing, the court is of the opinion that Jones's Motion to Dismiss Complaint for Interpleader and Order Funds to be Paid Over to Defendant, (doc. 3), is due to be denied.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 23rd day of February, 2009.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE